Case 7:23-cv-00168   Document 46   Filed on 03/18/25 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
March 18, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| EMILIO ESPARZA, | § |
| Plaintiff, | § § § |
| VS. | § § |
| ANTHONY J. BLINKEN, U.S. Secretary of State | § § § § § | CIVIL ACTION NO. 7:23-cv-00168 |
| Defendants. | § § |

## ORDER & OPINION

On January 14, 2025, the parties appeared for a trial before the Court.[1] Plaintiff Emilio Esparza appeared in person and by his attorneys Anthony Matulewicz and Joseph A. Connors, III. Kevin Hirst and Denisha D. Daughtry appeared as counsel for Defendant United States of America. The Court heard evidence in the case in order to determine Plaintiff's claim of U.S. Citizenship. After considering the evidence presented and the parties' arguments, the Court hereby **DENIES** Plaintiff's claim of U.S. Citizenship.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff brings the instant action challenging the U.S. Department of State's revocation of his U.S. passport and seeks a declaration of U.S. Citizenship.[2] Plaintiff's original Mexican birth certificate states that he was born in Reynosa, Tamaulipas, Mexico on February 4, 1999, at 3:30 a.m.[3] That certificate was registered with the Civil Registry in Tamaulipas, Mexico on March 15,

---

[1] *See* Minute Entry dated January 14, 2025.
[2] Dkt. No. 1.
[3] Dkt. No. 41-2.

1999.[4] Plaintiff's Texas birth certificate states that he was born in Hidalgo, Texas on May 4, 1999 at 3:30 a.m.[5] The birth certificate was signed by Sylvia T. Salinas, a midwife who owned and operated the Santa Maria Maternity Clinic in Hidalgo, Texas.[6] Plaintiff was first issued a U.S. passport in 2009.[7] Plaintiff applied to renew that passport in 2020.[8] However, the Department of State denied the application in 2023.[9] Plaintiff's Mexican birth certificate was rectified by a court in Mexico in 2020, amending the date of birth, time of birth, place of birth and date of registration to correspond with the information on the Texas birth certificate.[10]

At the bench trial, the Court heard testimony from Sylvia T. Salinas and Aida Guadalupe Garcia de Esparza, Plaintiff's mother. The Court also received deposition testimony from Juan Antonio Esparza Alfaro, Plaintiff's father. Ms. Salinas testified that she was the owner and operator of the Santa Maria Maternity Clinic in Hidalgo, Texas during 1999. Records from this clinic, detailing Plaintiff's mother's pregnancy and his own birth, were provided as evidence in this case.[11] While unable to recall the specific care of Plaintiff's mother nor the specific birth of Plaintiff, Ms. Salinas was able to verify that she created the clinic records detailing the gestational period as well as birth of Plaintiff. Further, Ms. Salinas testified to the general methods and particularities being followed in her clinic during 1999.

Plaintiff's mother testified to her recollections of her pregnancy as well as labor and delivery. She further testified that during her pregnancy, having lost her job and being concerned for the health of her unborn child, she and Plaintiff's father decided to employ a "coyote"[12] to file

---

[4] *Id.*
[5] Dkt. No. 41-8.
[6] *Id*.
[7] Dkt. No. 39 at 3.
[8] *Id.*
[9] *Id.*
[10] Dkt. No. 41-1.
[11] Dkt. Nos. 4-7, 9-12, 14-15.
[12] Individual to navigate the process.

a fraudulent Mexican birth certificate months before Plaintiff's birth in the United States so that Mexican healthcare might be obtained for Plaintiff.

## II. LEGAL STANDARD

The Court has jurisdiction to adjudicate Plaintiff's claim for declaration of U.S. citizenship under 8 U.S.C. § 1503(a). Plaintiff bears the burden of proving his citizenship by a preponderance of the evidence, and the Court determines the issue of citizenship *de novo*.[13]

## III. ANALYSIS

After comparing the testimonies of Ms. Salinas and Plaintiff's mother, with the documentation provided as evidence in this case, the Court finds that the testimonies and documentation are at incontrovertible odds with one another.

First, the lack of certain medical records compared to the records that have been provided by Plaintiff's mother is concerning. Ms. Salinas testified that her clinic outsourced certain testing to a laboratory during the period of Plaintiff's mother's pregnancy. Ms. Salinas further testified that the clinic would have received a copy of those laboratory results which would have been included in Plaintiff's mother's clinic record. However, those outside records seem to be conveniently missing from the provided medical records. All that remains are medical records created directly by the Santa Maria Maternity Clinic. Additionally, Plaintiff's mother testified that she was concurrently seeing a physician in Mexico during her pregnancy. However, none of those records were provided either. Records from either entity could have helped to support the alleged timeline. However, the lack of these documents altogether raises a red flag and the Court struggles to find a good reason why Plaintiff's mother would choose to retain *only* the records produced by Santa Maria Maternity Clinic for over 25 years.

---

[13] *See De Vargas v. Brownell*, 251 F.2d 869, 870 (5th Cir. 1958); *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012) *aff'd sub nom. Garcia v. Kerry*, 557 F. App'x 304 (5th Cir. 2014).

Next, the Court has doubts regarding the provided timeline of Plaintiff's mother's pregnancy. The clinic records note, and Plaintiff's mother confirmed in her testimony, that her last menses was August 10, 1998.[14] Plaintiff's mother further testified that she found out that she was pregnant on approximately August 20, 1998. She testified that she discovered she was pregnant because she started experiencing nausea while brushing her teeth. The records further indicate that Plaintiff's mother made a deposit at Santa Maria Maternity Clinic on September 8, 1998. Considering medical technology in 1999, it seems very unlikely that Plaintiff's mother could have known she was pregnant so soon after her menses.

In addition, Plaintiff's mother testified that she believes she visited the Santa Maria Maternity Clinic only once or twice before Plaintiff's birth. However, the Santa Maria Maternity Clinic records indicate that she visited the clinic for appointments on multiple occasions.[15]

Moreover, the Santa Maria Maternity Clinic records include a "Risk Assessment" signed by Ms. Salinas on September 8, 1998 indicating that she was assessing Plaintiff's mother during her second and third trimesters; the first trimester options remain blank. A finding that Plaintiff's mother was in her second trimester on September 8, 1998 would align with the February 4, 1999 birth date found in the original Mexican birth certificate.

Further, as previously mentioned, Plaintiff's original Mexican birth certificate lists a birth date of February 4, 1999 at 3:30 a.m.[16] Plaintiff's Texas birth certificate lists a birth date of May 4, 1999 at 3:30 a.m.[17] This means that by Plaintiff's argument, when utilizing the coyote to file the original Mexican birth certificate, Plaintiff's parents would have coincidentally guessed his exact birth time months in advance of his actual birth. Incredibly, they would have also guessed the same

---

[14] Dkt. No. 41-4 at 2 & 3.
[15] Dkt. No. 41-6.
[16] Dkt. No. 41-2.
[17] Dkt. No. 41-8.

4th day of the month. The Court finds this occurrence to be too unlikely for coincidence. What seems more likely is that Plaintiff's actual birth month reflected on the original Mexican birth certificate was advanced by 3 months on the clinic records with the day, time and year remaining the same.

Additionally, Plaintiff's mother testified that she had a difficult labor and birth stating that she suffered a great deal during delivery and had a "dry birth" as a result. Yet the records from the Santa Maria Maternity Clinic show that Plaintiff's mother's pulse remained fairly steady at 76 and her blood pressure generally at a perfect 120/80 for the duration of the labor and delivery.[18] The Court finds it unlikely that a woman experiencing such difficulties during labor would not even experience a corresponding rise in pulse or blood pressure.

In his closing argument, counsel for Plaintiff seemed to rest his laurels on Plaintiff's baptism certificate noting Plaintiff's date of birth as May 4, 1999.[19] The certificate also lists a baptism date of December 4, 1999 and an issuance date of May 6, 2016. However, if the Parish based the listed birthdate on the Texas birth certificate, then the same fundamental concerns exist with the veracity of the date of birth on this document as well. The Court cannot be sure what information the Parish utilized when it issued the certificate. Thus, the certificate does little to support the alleged date of birth notated therein.

Likewise, Plaintiff's argument that the Court should recognize the rectified Mexican birth certificate without question does little to convince this Court that it should do so. As noted by Plaintiff, "U.S. courts emphasized the presumption of validity for foreign judgments *unless there is evidence of fraud* or fundamental unfairness. The rectified Mexican birth certificate aligns with

---

[18] Dkt. No. 41-11.
[19] Dkt. No. 41-3.

Plaintiff's Texas birth certificate, thus meriting recognition under these precedents."[20] As the Court has now outlined in the preceding paragraphs, the records from the Santa Maria Maternity Clinic upholding the Texas birth certificate do not align with the testimonial recollection provided at trial and even contain fallacies within the documents themselves. Thus, if there are clear issues with the Texas birth certificate, it follows that there is likewise evidence of fraud underlying the rectified Mexican birth certificate.

### IV. HOLDING

In light of the aforementioned, the Court finds that Plaintiff has failed to prove his United States citizenship by a preponderance of the evidence. Thus, the Court hereby **DENIES** Plaintiff's claim for declaration of U.S. Citizenship.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 18th of March, 2025.

_____
Micaela Alvarez
Senior United States District Judge

---

[20] Dkt. No. 39 at 4, ¶ 4.